# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

In re DANN OCEAN TOWING, INC. as Owners of the tug CAPTAIN DANN for Exoneration from or Limitation of Liability

1:15-cv-01610-NLH-AMD

**OPINION**

**APPEARANCES**:

GUERRIC S.D.L. RUSSELL
NICOLETTI, HORNIG & SWEENEY, ESQS.
505 Main Street, Suite 218
HACKENSACK, NJ 07601

JEFFREY S. MOLLER
BLANK ROME, LLP
ONE LOGAN SQUARE
PHILADELPHIA, PA 19103

MICHAEL J. LORUSSO
DUGAN BRINKMANN MAGINNIS & PACE
1880 JFK BOULEVARD
14TH FLOOR
PHILADELPHIA, PA 19103

JAMES JOSEPH QUINLAN
BLANK ROME LLP
WOODLAND FALLS CORPORATE PARK
210 LAKE DRIVE EAST
SUITE 200
CHERRY HILL, NJ 08043

   On behalf of Dann Ocean Towing, Inc., as Owners of the tug
   CAPTAIN DANN and Buckeye Pennsauken Terminal, LLC

JAMES WILLIAM JOHNSON
RICCI TYRRELL JOHNSON & GREY, PLLC
WILLOW RIDGE EXECUTIVE OFFICE PARK
750 ROUTE 73 SOUTH - SUITE 202B
MARLTON, NJ 08053

KELLY JEANNE CASTAFERO
RICCI TYRRELL JOHNSON & GREY
1515 MARKET STREET SUITE 700
PHILADELPHIA, PA 19102

    Vane Line Bunkering, Inc. as Titled Owner of the Barge DS-210

RANDY C. GREENE
DUGAN BRINKMANN MAGINNIS PACE
1880 JOHN F. KENNEDY BLVD
14TH FL
PHILADELPHIA, PA 19103

    On behalf of Certain Underwriters

**HILLMAN, District Judge**

This matter concerns a collision of barge with a dock when a tugboat attempted to moor the barge. The present issues before the Court are whether the charterer of the tug can be held liable for the damages suffered by the dock owner, and whether the tugboat owner can be liable for the charterer's attorney's fees and costs incurred as a result of the tugboat's negligence.

Pending before the Court is the motion of the charterer, Vane Line Bunkering, Inc. ("Vane"), for summary judgment on the claims against it by the dock owner, Buckeye Pennsauken Terminal, LLC ("Buckeye"). Also pending is Buckeye's motion for partial summary judgment on Vane's indemnification claim against the tugboat owner, Dann Ocean Towing, Inc. ("Dann Towing"). For the reasons expressed below, both motions will be denied.

**BACKGROUND**

On October 5, 2014, Vane contacted Dann Towing to charter its tug, the CAPTAIN DANN, to deliver one of Vane's unmanned tank barges, the DS-210, to the Buckeye Pennsauken Terminal on the Delaware River. At 7:50 pm (or 1950 hours), during a strong "flood tide,"[1] the CAPTAIN DANN, with Captain Robert "Bobby" Hudnall at the helm and assisted by deckhand Daniel Williams, set out to retrieve the barge. Captain Hudnall rigged the barge to the CAPTAIN DANN in "pushing gear," which means that the tug was positioned with its bow to the stern of the barge and connected by cables.

At 8:50 pm (or 2050 hours), Captain Hudnall attempted a fair tide[2] landing in order to moor the barge to Buckeye's Dock #1 facing upriver, starboard side to the dock, as instructed by Buckeye. Because of the tremendous current, the barge collided with Dock #1, causing significant damage to the dock and loss of

---

[1] As explained in In re Petition of Frescati Shipping Company, Ltd., 2016 WL 4035994, at *19 n.42 (E.D. Pa. July 25, 2016):

> The "tide" is the vertical movement of the water level, and tides in the Delaware River are semidiurnal (meaning that there are two high tides and two low tides each day). . . . The "tidal current" is the "horizontal component of . . . water movement." When water flows up-river, this is referred to as a flood tide; when it moves down-river, it is referred to as an ebb tide.

[2] A "fair tide" is a tidal current in such a direction as to increase the speed of a vessel.

3

business to Buckeye.

Several actions were instituted arising out of the collision in this Court and the Eastern District of Pennsylvania. The two remaining actions, pending here and consolidated for all purposes, concern Vane's liability for the accident.[3] Vane has filed for summary judgment in its favor on Buckeye's claims that Vane is liable for the negligence of Dann Towing in causing the damage to Buckeye's dock and business, and it is independently liable for its own negligence arising out of its charter of the CAPTAIN DANN. Buckeye has moved for partial summary judgment on Vane's claim that it is entitled to its attorney's fees and costs relating to this action. Both parties have opposed each other's motions.

## DISCUSSION

### A. Subject matter jurisdiction

This Court may exercise subject matter jurisdiction over the remaining tort and business loss claims because the injuries suffered on land were caused by a vessel on navigable water affecting maritime commerce. See 28 U.S.C. § 1333(1); Jerome B.

---

[3] The first action was commenced by Dann Towing Company and Dann Ocean Towing as the Owners of the tug CAPTAIN DANN under Civil Action No. 15-1610; the second action was filed by BB&T Equipment Finance Corporation and Vane as the Titled Owner and Owner *pro hac vice* of the barge DS-210 under Civil Action No. 15-2313. The two limitations proceedings were consolidated on June 25, 2015.

4

Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 531 (1995); Matter of Christopher Columbus, LLC, 872 F.3d 130, 134 (3d Cir. 2017).

**B.    Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

5

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Analysis**

    **1. Vane's motion for summary judgment (Docket No. 86)**

Buckeye claims that Vane is liable for the damage caused to its dock because Vane had extensive control over the CAPTAIN DANN, and because Vane failed to exercise due diligence and reasonable care in selecting a safe and competent tugboat to tow Vane's barge to Buckeye's dock. Vane argues that it cannot be liable for Dann Towing's actions because the parties were operating under a traditional time charter, whereby Vane, as the time charterer, had no operational control over the CAPTAIN

DANN, and assumed no liability for the vessel's unseaworthiness or damage due to the crew's negligence. Vane further argues that it, as a time charterer, did not have an independent duty to vet whether the CAPTAIN DANN was capable of safely docking its barge.

As explained in <u>Dougherty v. Navigazione San Paolo, S.P.A. Medafrica Line</u>, 622 F. Supp. 1, 3-4 (E.D. Pa. 1984), there are three types of charter parties under general maritime law - the voyage charter, the time charter, and the demise or bareboat charter:

> In a voyage charter the ship is engaged to carry a full cargo on a single voyage. The owner retains all control over the vessel. In a time charter the ship's carrying capacity is taken by the charterer for a fixed time for the carriage of goods on as many voyages as can fit into the charter period. Again, the owner retains all control for management and navigation. In a demise or bareboat charter, the charterer takes over full control of the ship and becomes the owner *pro hac vice*. The charterer thus assumes control of management and navigation. <u>See generally</u>, G. Gilmore and C. Black, *The Law of Admiralty* 193-94 (2d ed. 1975).

<u>Dougherty</u>, 622 F. Supp. at 3-4 (some internal citations omitted).

Under a traditional time charter, "'possession and control remain with the owner and the ship is operated by its regular crew, but the charterer determines the ship's routes and destinations.'" <u>Weeks Marine, Inc. v. Hanjin Shipping</u>, 2005 WL 1638148, at *3 (D.N.J. 2005) (quoting <u>Migut v. Hyman-Michaels</u>

Co., 571 F.2d 352, 355 (6th Cir. 1978)) (citing G. Gilmore & C. Black, *The Law of Admiralty*, § 4-1, at 194 (2d. ed. 1975)) ("[T]he charterer directs the commercial activities of the boat, but the owner's people continue to navigate and manage the vessel . . . . The time charter is used where the charterer's affairs make it desirable for him to have tonnage under his control for a period of time, without undertaking the responsibilities of ship navigation and management or the long-term financial commitments of vessel ownership.").

Thus, who has control over the vessel determines whether a charter is a time charter or a demise or bareboat charter:

> The first problem is of course distinguishing the demise from the regular time and voyage charters. The test is one of "control"; if the owner retains control over the vessel, merely carrying the goods furnished or designated by the charter, the charter is not a demise; if control of the vessel itself is surrendered to the charterer, so that the master is his man and the ship's people are his people, then we have to do with a demise.

Dougherty, 622 F. Supp. at 3-4 (quoting G. Gilmore and C. Black, *The Law of Admiralty* 240 (2d ed. 1975)).

In addition to a situation where a purported time charterer retains control over the vessel and therefore does not fully shift liability to the vessel owner, a time charterer may be held liable for its independent negligent acts even when the time charter entered between the time charterer and the vessel owner was a traditional time charter party. See Weeks Marine,

2005 WL 1638148, at *3 (citing Helaire v. Mobil Oil Co., 709 F.2d 1031, 1041-42 (5th Cir. 1983) (time charterer liable for injury resulting from decision to continue unloading operations in extremely dangerous weather); Graham v. Milky Way Barge, Inc., 824 F.2d 376, 388 (5th Cir. 1987) (court upheld a finding that, under the circumstances, the time charterer was liable for death and injury because the charterer sent vessel into unsafe waters and failed to broadcast weather information); Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc., 462 F. Supp. 485, 490 (E.D. La. 1978) (time charterer liable for injury to passenger during navigation in rough seas when time charterer affirmatively decided to encounter the weather); Turner v. Japan Lines, Ltd., 651 F.2d 1300 (9th Cir. 1981) (under clause of charter party, the time charter is responsible for the "load, stow, trim and discharge," time-charterer was responsible for injuries sustained by off-loading longshoreman, who was severely injured when a defective stow collapsed); Fernandez v. Chios Shipping, 542 F.2d 145 (2d Cir. 1976) (improper discharge of cargo was within scope of responsibilities shifted from shipowner to time charterer by clause of time charter, and time charterer was obligated to indemnify shipowner)).

Here, Vane argues that the time charter between it and Dann Towing was a traditional time charter - that is, the parties' time charter agreement was formed to be in line with black-

9

letter maritime law and Vane exercised no control over the CAPTAIN DANN. Therefore, Vane argues that it can have no liability for the allision of the CAPTAIN DANN with Buckeye's dock. Vane also argues that a time charterer has no duty for which it may be held liable regarding the investigation into the vessel owner's safety procedures.

In contrast, Buckeye argues that in addition to the fact that the time charter was only an oral agreement, Vane's actions refute Vane's contention that it did not control the CAPTAIN DANN. Buckeye argues that the charter was more like a demise charter, and Vane's control over the CAPTAIN DANN evidences that the parties did not intend to fully shift liability to Dann Towing like a traditional time charter. Moreover, Buckeye argues that Vane was independently negligent by failing to safely control the maneuvers and activities of the CAPTAIN DANN, and by failing to make any inquiry into the substance of Dann Towing's safety protocols, procedures, or systems.

This Court concludes that material disputed facts preclude the entry of summary judgment as to:

> 1. *The terms of the charter party between Vane and Dann Towing*

The standard written agreement for a time charter party contains 48 clauses spanning 15 pages, and it includes provisions regarding which party is responsible for the safe

management of the vessel, the shipboard personnel, the duty to maintain the vessel, the duration of the time charter, the owner's duties versus the charterer's duties, and the terms of payment. (See Docket no. 90-14.) In contrast, the time charter agreement between Vane and Dann Towing was never reduced to writing,[4] it was for an unspecified duration, and its terms are based on the testimony of Vane and Dann Towing principals and employees. At summary judgment, this Court cannot assess the credibility of that testimony to determine the nature of the parties' agreement, as that testimony could be – depending on how it is assessed by the fact-finder – either viewed to demonstrate a traditional time charter arrangement, or viewed to be a self-serving effort to cast the parties' agreement into that type of arrangement and hide its true nature.

### 2. The extent of Vane's control over the CAPTAIN DANN

In the same vein as the dispute over the terms of the agreement between Vane and Dann Towing, Vane's interaction with

---

[4] It is not disputed that a time charter may still be valid even when it is only an oral contract. See Tarstar Shipping Co. v. Century Shipline, Ltd., 1979 A.M.C. 1096, 1108–09 (2d Cir. 1979) (citing Kossick v. United Fruit Co., 365 U.S. 731, 734, 1961 AMC 833 , 836 & n.4 (1961)) (other citations omitted) ("[M]aritime contracts are valid and enforceable even if not in writing. The critical issue is not whether the charter party was signed by the party sought to be charged * * *, but whether there was a meeting of the minds as to the essential terms of the agreement, even though unsigned by one party."). Rather, Buckeye disputes the content of Vane and Dann Towing's oral agreement.

11

Dann Towing and the CAPTAIN DANN is subject to credibility assessments. Buckeye has presented evidence that Vane controlled the CAPTAIN DANN's every movement on the date of the accident. Vane first directed the CAPTAIN DANN to pick up and deliver the DS 210 barge, but redirected the vessel to temporarily dock the barge and perform other jobs, only to return to the DS 210 later during a flood tide.

Buckeye has also presented evidence that Vane's use of the CAPTAIN DANN could be found to be akin to how it used its own fleet. For example, Vane's fleet of barges exceeded the capacity of its tugboats, and it contracted with Dann Towing to assist in the movement of its barges. Buckeye has presented evidence that on a day-to-day basis, Dann Towing management only checked in once a day with the CAPTAIN DANN crew, and they were otherwise managed by Vane. Indeed, Vane utilized the CAPTAIN DANN for over 900 movements from 2006 through October 2, 2014. Vane disputes Buckeye's characterization of its actions, but Buckeye has met its burden at summary judgment to show the existence of genuine material disputes as to Vane's control of the CAPTAIN DANN.

### 3. Vane's duty to investigate Dann Towing's safety procedures

Buckeye contends that Vane had an independent duty, which it breached, to educate itself about Dann Towing's safety

procedures and safety history, to be sure it satisfied the safety protocols Vane had set for its own fleet. This argument also depends on the nature of the agreement between Vane and Dann Towing, and the extent of Vane's control over the CAPTAIN DANN.

As Vane points out, under a true time charter, a charterer has no liability for the chartered vessel's acts, and it correspondingly has no duty to discover the chartered vessel's safety procedures or potential for creating hazards. Where, however, as discussed above, a charter exercises a certain degree of control over the hired vessel, a charterer may be liable for its independent negligence.

Moreover, the general maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules," which incorporates a body of maritime tort principles. East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864–65 (1986) (citing Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630 (1959)) (other citations omitted). This includes holding a charterer liable for the actions of an independent contractor over which the charterer otherwise holds no duty. See, e.g., Matter of P & E Boat Rentals, Inc., 872 F.2d 642, 647 (5th Cir. 1989) ("We agree that a time charterer who has no control over the vessel, assumes no liability for negligence of the crew or

unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise. However, this general rule does not exempt a time charterer from liability if it is negligent in conducting its activities as time charterer." (internal quotations and citations omitted)); Viser v. Trinity Catering, Inc., 2007 WL 4206879, at *3 (E.D. La. 2007) (denying summary judgment, finding that the language in the time charter agreement removing responsibility from I.G. Petroleum for management, navigation, operation and control of the M/V Dewitt did "not summarily eliminate a finding of tort liability" because "a principal can be held liable for the torts of an independent contractor if the principal exercises operational control over the independent contractor's actions," and the plaintiff "presented facts that Mr. Goins, I.G. Petroleum's consultant, was under the direct control of I.G. Petroleum and taking his orders from I.G. Petroleum as to the operations of the M/V Dewitt" (internal quotations and citations omitted)); Alexander v. U.S., 63 F.3d 820, 822 (9th Cir. 1995) (noting that even when the charter is unambiguous that the ship owner retained operational control of the vessel under the time charter, the plaintiff, an injured crewman of the vessel, could still prevail on his claim against the time charterer if he could show that despite the language of the charter, the time charterer actually exerted operational control over the vessel);

cf. Smolnikar v. Royal Caribbean Cruises Ltd., 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011) ("Though cruise ship owners, such as Royal Caribbean, cannot be held vicariously liable for the negligence of an independent contractor, it is well-established that they may be liable for negligently hiring or retaining a contractor."); Joyce v. Joyce, 975 F.2d 379, 385 (7th Cir. 1992) (noting that "the essential thrust of the tort of negligent entrustment is that a shipowner can be held liable for negligent entrustment only if he knows or has reason to know that the person being entrusted is incapable of operating the vessel safely").

Thus, because maritime law contemplates that Vane could be liable for its actions relative to the hiring of the CAPTAIN DANN, and that liability depends on the nature of the charter and the relationship between the charterer and vessel owner, summary judgment must be denied on this issue as well.

### 2. Buckeye's motion for partial summary judgment (Docket No. 85)

During the course of this case, Buckeye settled its claims against Dann Towing for the damage it caused to Buckeye's dock and for Buckeye's lost business expenses. As part of the settlement, Buckeye agreed to indemnify Dann Towing from Vane's cross-claims against Dann Towing. At the time of settlement, Dann Towing affirmed that it had no written or oral agreement

15

with Vane as to indemnification.

Vane's cross-claims against Dann Towing include a claim for indemnification. Vane argues that it is entitled to implied indemnification from Dann Towing for the attorney's fees and other costs it has expended in this litigation because Dann Towing breached the warranty of workmanlike performance when, despite holding itself out as capable, it failed to safely dock Vane's barge at Buckeye's dock. Buckeye, as indemnitor of Dann Towing for Vane's cross-claims against it, has moved for summary judgment on this one cross-claim of Vane's.

The Court finds that any implied indemnification claim for Dann Towing's breach of the warranty of workmanlike performance is intertwined with the resolution of Buckeye's claims against Vane, which all center on the relationship between Vane and Dann Towing, as well as Vane's independent duties as charterer. Thus, the Court will deny Buckeye's motion for partial summary judgment at this time.[5]

---

[5] It is important to point out that in this procedural posture, if Buckeye prevails on its claims against Vane, and Vane's indemnification cross-claim is cognizable, Buckeye's indemnification of Dann Towing for Vane's cross-claims against Dann Towing would make Buckeye responsible for Vane's attorney's fees and costs for the very claims on which Buckeye has won against Vane. On the flip side, if Vane prevails against Buckeye, the result will effectively impose a fee shifting arrangement in Vane's favor that violates the American rule. See Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. 2158, 2164 (U.S. 2015) (internal quotations and citation omitted) ("Our basic point of reference when considering the award of

**CONCLUSION**

As the Fifth Circuit noted, "it may be unusual for a time charterer to be held liable for an incident concerning the vessel under charter," Graham, 824 F.2d at 388, but where disputed material facts exist as to the nature of the charter party, the extent of the charterer's control over the chartered vessel, and the charterer's own independent acts, the Court cannot determine at summary judgment whether this is an unusual case or not.  Additionally, based on the same disputed facts, the Court cannot determine whether Vane is entitled to indemnification by Dann Towing for its attorney's fees and costs arising out of this litigation.  The disputed facts must be resolved by the fact-finder at trial before the relevant legal principles are applied.

An appropriate Order will be entered.


Date: February 15, 2018              s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.

---

attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.").  The Court is skeptical of the propriety of either result.